## W. F. and SUSAN LAMBETH v. W. H. ELDER, Adm'r.

1. VENDOR—LIEN—DISCHARGE—ESTOPPEL.—Where an administrator, upon the suggestion that it would be for the benefit of those interested, obtains an order of the probate court to sell the lands of his intestate, and sells the same upon a credit, taking the notes or bonds of the purchaser for the several amounts, and afterwards files these notes or bonds with his final account, charging himself with the amounts

as if collected, and said final settlement is confirmed by order of the probate court, and he is finally discharged from said administration, the land is discharged of the lien, and he is estopped by the probate records to pay the notes which have not been paid. The decree of the probate court, so long as it remains unreversed, is conclusive upon him, and all others who were parties to it, as to all matters and facts brought within its scope, and upon which it was predicated,

2. Probate decree—Jurisdiction—Depreciated money.—In a suit on an administrator's bond, for a distributive balance the administrator will not be permitted to vary the effect of the probate decree, by showing that the fund for distribution had been collected in depreciated currency from failing debtors, and that this was the best that could be done. Such matters were proper for the consideration of the probate court, but cannot be introduced for adjudication in this action, for the purpose of reducing the sum decreed by the probate court to be due to the distributees. 10 S. & M., 409.

3. Probate sale—Vendor's lien.—The lien on property sold under probate decree results from the sale, and has preference over every other claim against the purchaser, and the property is liable in the same manner as if a mortgage had been taken. This lien attaches alike to "personal" and real property, sold on a credit under probate decree.

4. Statutory lien substantially of record.—It is the policy of the law to shield the *bona fide* purchaser for value from all liens and equities of which he has no notice, actual or constructive. This statutory lien is "of record" in the proceedings and judgments of the probate courts, the recitals in the administrator's deed, of the order of the court authorizing him to make the sale, etc., etc.; the purchaser from the vendee of the administrator takes the risk.

5. Final settlement concludes all parties.—Where the notes given for the land are included in the final account by the administrator, as a debit against himself, it is conclusive against him that the amounts had been received by him in favor of the heirs; and it is also conclusive against them (for they were parties to the settlement) in favor of any sub-vendee of the land.

6. Sheriff's sale.—The purchaser who buys at sheriff's sale, is clothed with all the rights of the judgment debtor, and may invoke to his support all the protection and defenses which the judgment creditor might or could do, being, by his purchase, subrogated to all his rights and defenses.

Error to the chancery court of Tishomingo county. Brad-FORD, J.

The facts are clearly stated in the opinion of the court.

The plaintiffs in error assigned the following errors :

1st. The answer denies on oath that defendant in error was the administrator of the estate of Nancy Sorrel at the beginning of this suit, and the proof sustains the answer.

2d. No decree *pro confesso* was taken against Wm. F. and Susan Lambeth.

3d. The record and proofs in the cause show that the notes sued on were fully paid off and satisfied on the 9th of March, 1858.

4th. Because it appears from the pleadings and proofs in the cause that Susan and Wm. F. Lambeth combined and confederated with their brother-in-law, the defendant in error, Elder.

5th. Because said L. P. Reynolds, plaintiff in error, and those under whom he claims, are innocent purchasers, for a valuable consideration, without notice of the mortgage and notes sued on in this action.

6th. Because said decree is otherwise illegal, informal, and defective.

*Sale & Dowd,* for plaintiffs in error.

1st. Elder, the defendant in error, alleges that he is the administrator of Nancy Sorrell, and sues as such. This is denied on oath by the answer. The record shows he was finally discharged on the 11th of September, 1858. Rev. Code, 451–2, arts. 106, 107, 108, 109; Robinson .v. Gholson, 8 S. & M., 392; Stubblefield v. McRaven, 5 S. & M., 301; Bailey v. Dilworth, 10 S. & M., 404; Fort v. Battle, 13 S. & M., 133.

2d. Service of process was had on W. F. and Susan Lambeth, who did not answer, and a final decree was rendered against them without *pro confesso* having been previously taken.

The code provide that if there is service of process and no plea, answer, or demurrer, the bill must then be taken *pro confesso*. This is a decretal order, and becomes evidence of the allegations of the bill at the hearing. A final decree can only be taken after *pro confesso* in such a case. Rev. Code, 456–7, art. 39; 1 Daniel's Ch. Pr., 569, 570–77; Robinson v. Townsend, 3 Gill & Johnson, 413; 4 Henning. & Munford, 476; Pegg v. Davis, 2 Blackford, 281; Singleton v. Gale, 8 Porter, 270; Wilkins v. Wilkins, 4 Porter, 245; Cunningham v. Steele, 2 Little, 58.

3d. In the final account of the complainant in the bill he charges himself with $1,722, the amount of the proceeds of the sales of the land as received by him. A final decree was made by the probate court confirming and allowing this

account. It was sworn to. Wm. F. and Susan Lambeth, the brother and sister-in-law of the administrator, and the principals in the notes sued on in this action, were parties to this decree. After this decree the land was sold and the money received by Lambeth and wife from an innocent purchaser, who was informed by this solemn decree to which both the makers and payee of the notes were parties; that the administrator had collected the money on the notes and they were paid.

The administrator is estopped from denying the recitals of the order of the court, and the facts on which it is founded made on his sworn application. Brown v. Hill, 27 Miss., 51–2. The final account cannot be collaterally assailed. Singleton v. Garrett, 23 Miss., 196, 197, 198; Baily v. Dilworth, 10 S. & M., 401. The final settlement is conclusive on the administrator, and cannot be called in question collaterally. Austin v. Lamar, 23 Miss., 190. Even an annual account is conclusive on the administrator as a general rule, and *prima facie* binding on all other persons. Lee v. Gardner, 26 Miss., 548; Winburn v. King, 35 Miss., 158; McFarlane v. Randle, 41 Miss., 411.

4th. L. P. Reynolds is an innocent *bona fide* purchaser, without notice of the mortgage lien claimed by Elder, the defendant in error. It is not shown in the record that the deed of the administrator reserved a lien on the land as the statute requires. But even if this were so, the final account of the administrator and the final decree are conclusive evidence that the debt and mortgage were satisfied, and is equivalent to an entry of satisfaction on the mortgage itself. 2 Story's Eq., § 150–152, 153, 154; 1 Story's Eq., § 409, 410, 411. Elder, by placing on record the fact that the mortgage notes were paid, thereby inducing an innocent party to part with his money, is estopped in equity from setting up his claim or title against such a purchaser. Dickson v. Green, 24 Miss., 612; Boon v. Barns, 23 Miss., 136.

There was no counsel for the defendant in error.

Simrall, J. :

W. H. Elder, administrator of Nancy Sorrell, deceased, exhibited his bill in the chancery court of Tishomingo county, against W. F. Lambeth, Susan Lambeth, and J. M. Hancock. The bill alleges that on the 17th of Sept., 1855, the complainant sold at public vendue, on a credit of one and two years, certain parcels of land, of which his intestate died seised and possessed, to W. F. Lambeth, for the aggregate price of $1,320. That the sale was made under the decree and license of the probate court of Tishomingo county. That said Lambeth executed notes or bonds for the purchase money with J. M. Hancock as his surety. That both Lambeth and Hancock are insolvent. That the statutory lien on the land is the only security for the debt, he prays for a foreclosure of the lien, and a sale of the land. The bill was filed 31st July, 1866.

L. P. Reynolds, on the 26th Sept. of same year, presented his petition to be made a party defendant, claiming that he was the owner in fee simple of the land, by purchase, and mesne conveyance. On this application he was let in as a defendant. He demurred to the bill, which was overruled ; thereupon he filed two pleas, on which no action was taken, further notice of them is not necessary, as the matters of the pleas were set up in his answer.

The answer was that the sale made by the administrator was illegal. That on the 8th of Jan., 1857, Susan Lambeth sold and conveyed the land to McCalla and Davis for $1,800. That on February 14th, 1857, McCalla, for a valuable consideration, conveyed to Thos. Langley. That Elder having fully administered the estate, on the 7th March, 1858, made a final settlement, in which the notes for the land was included and accounted for, and on the 11th May, 1858, the account was allowed, and confirmed. That Langley, on the 8th of Jan., 1859, seised and in possession of the land, sold and conveyed it to Lawrence. That in 1866, the lands was sold by the Sheriff under execution against Lawrence, when the respondent became the purchaser, and went into posses-

sion. He insists that by virtue of the probate proceedings the land is discharged of the lien.

Elder filed an amended bill, not varying in any particular worthy of note, from the original. The several deeds referred to in the answer, and also a transcript of the administration of the intestate's estate, from the files and records of the probate court were filed as exhibits with the answer. The lands were ordered to be sold on the suggestion that it would be for the interest of those interested in the estate.

The administrator, in 1868, made a final settlement of his accounts, as appears on notice given to the heirs and distributees of the estate. In that settlement he charges himself with $1,720, the proceeds of all the lands sold by him, which included the land in controversy, and also with ten per cent. interest, a part of which must apply to the land sales.

What is the effect of this proceeding on the claim set up in the bill to enforce the statutory lien on the land? Reynolds insists that it estops the administrator from asserting as against him, that the money due the administrator, from his vendee, Lambeth, has not been paid. Especially, he insists, ought this to be so, since he purchased for value after this settlement, relying on the truthfulness and verity of the probate record.

In Singleton v. Garrett et al., 23 Miss. Rep., 196, the facts were, that Garrrett, administrator of one Singleton, had sold real estate to the amount of $22,000, on the suggeston that it would be for the interest of the heirs so to do; his final settlement showed a balance of $17,650 for distribution; suit was brought on his general administration bond by Francis Singleton, one of the distributees, alleging a failure of the administrator to pay over to him his aliquot part of the fund. The defense made was that Garrett had included in his final account the proceeds of the land sale, which was larger than the balance decreed to be distributed, and therefore he and his surety especially were not liable on this bond. But on the special bond, conditioned to dispose of the proceeds of the sale, as the land would have descended, etc.

86 W. F. & S. LAMBETH *v.* W. H. ELDER, Admr. Sup. Ct.

Opinion of the Court.

It was held that the defense could not be made, because of the conclusiveness of the probate decree. *Arguendo,* the court say: "It raises the question directly, whether the judgment was right on the evidence, or it in effect goes behind, and disregards the judgment by putting in issue a fact on which the judgment was founded. The administrator by his own acts, has precluded himself from the inquiry whether he did or did not receive assets. By solemn judgment it appears that he did, and he cannot gainsay it. "Certainly if any point is placed beyond cavil, it is that the final decree of the probate court on final settlement, when regularly made after notice, is conclusive at least on the administrator."

The final settlement shows a balance for distribution. In any suit brought by the distributees to recover this balance, Elder the administrator would be estopped, to say that in fact and truth, the purchase for the lands had not been realized by him, and therefore that sum must be deducted from the distributive fund. He has reported it as money collected. The court has adjudicated upon it as an element in his account, and its decree, so long as it continues unrevised, is conclusive upon him and all others who were parties to it, as to all the matters and facts brought within its scope, and upon which it was predicated.

Bailey v. Dilworth, 10 S. & M., 409, was suit for the distributive balance on the administrator's bond. The offer was to vary the legal effect of the probate decree, by showing that the fund for distribution had been collected in depreciated currency from failing debtors under advice of distinguished counsel, and that this was the best that could have been done. It was declared, however, that whilst these matters might have been proper for the consideration of the probate court, it comes too late, when proposed in this action, in order to reduce the sum decreed to be due the distributees by the probate court. *Prima fiacie,* at least, the annual account is binding on the administrator.

The lien on property sold under probate decree results

from the sale, "and shall have preference of any other claim or claims against the purchaser or his assignee; and the property shall be liable to the payment thereof, in the same manner as if a mortgage had been taken," etc. Hutch. Code, 676, sec. 3, art. 8.

No special reservation of lien need be retained in the deed. The matter, however, out of which the lien springs, is of record. The statute does not make it the duty of the administrator, on payment of the purchase money, to endorse on the deed recorded in the probate clerk's office a discharge of the lien. An examination then, by purchaser for this sort of incumbrance, was not contemplated by the statute, for the lien attaches to all the property sold by probate decree on a credit, personal as well as real, the title to the former passes by delivery without written evidence.

The general policy of our jurisprudence shields the *bona fide* purchaser for value, from all liens and equities of which he has no notice, actual or constructive. This statutory lien is in one sense of "record." The evidence of its existence is easily discovered. It may be gathered from the recitals in the deed of administrator, of the license of the court to make the sale, and in the proceedings and judgment of record.

No mode of notice of the extinguishment of the lien is prescribed by law. A purchaser from the vendee of the administrator takes the risk. He must make inquiry whether the money has been paid or not. Evidence of the satisfaction of the lien may exist on record, quite as full and complete as of the inception and creation of it, as when the administrator reports to the court that the debt has been paid.

If, on an inspection of the records of the probate court, the administrator has returned in his accounts the debt as collected, and the court, in acting on the account, treats it as moneyed assets, we are of opinion that the purchaser might well repose on the truth of the record, and in these circumstances would take the land discharged of the lien.

In this case, the debt for the lands was included in the final account by the administrator as a debt against himself. It formed a large item in making up the amount for distribution. It was parcel of the facts upon which the judgment of confirmation operated. It is conclusive upon the administrator, that this very debt had been received by him, in favor of the heirs; and it is also conclusive on the heirs (for they were parties to the settlement) in favor of any surrender of the land. So far as he is concerned, it would not matter whether the record were true or false in this behalf, if he were acting in good faith and paying the value for the land.

The import which we attach to the proceedings in the probate court is strongly supported by other considerations. The final settlement was preceded by several partial ones. It purported to account for all the assets, real and personal. The administration had been in progress since 1852. The creditors must either have been paid, or their claims barred by statutes of limitation. There was, therefore, no longer a reason to keep the estate open. The heirs and distributees were notified to appear. There was no objection to the accounts as stated, or to the decree confirming and ratifying it. The last installment on the land had been due more than a year, when the settlement was made. The purchaser from the administrator had in the meantime sold the land for twice its cost to him.

No person was authorized to receive and give acquittance for the debt except the legal representative of the intestate. It would have been the plain duty of Elder not to have closed up the estate until he had collected this debt. More than this, the bill was not filed until 1866, nine years after the last installment was due, and eight years after the final settlement.

Reynolds, who bought at sheriff's sale, is at least clothed with all the rights of Lawrence, the judgment debtor, and may invoke to his support, all the protection and defenses which Lawrence might, or could; his purchase subrogated him in the stead of Lawrence. 2 Story's Eq. Jur., 1503–6.

W. F. Lambeth, one of the defendants, was the purchaser from the administrator and his debtor. He was also vendor of the land, with general covenants of warranty to his vendee, and his assigns; yet the bill as to him was not taken for confessed, nor dismissed.

Rendering here such decree as the chancellor ought to have rendered, we reverse the decree of the chancery court, and dismiss the complainant's bill.