# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1875.

---

### TIMOTHY BROWN vs. MARY BARLOW.

1. GUARDIAN AND WARD: *Approval of accounts; effect thereof.*
   The orders of the court upon the annual accounts of guardians import a
   sanctity and verity as to the matters set out therein, and constitute to
   that extent immunity to a purchaser.

2. SAME: *Lien on land sold in favor of the ward; satisfaction thereof.*
   The statute providing for a lien for the purchase money, for such sales and
   the continuance thereof, "until an acknowledgment or satisfaction
   shall be entered of record," is applicable to both personal and real
   property, and hence the " satisfaction " contemplated is not limited to an
   entry upon the margin of the deed, or to an entry of a formal order of
   " satisfaction " or " acknowledgment " by the court. But it is sufficient,
   if there be some order by the court, necessarily implying an adjudica-
   tion of the fact of the collection of the money, and the consequent dis-
   charge of the lien.

3. SAME: *Case in judgment.*
   In 1858, B., as guardian, sold the real estate of his wards, under a decree of
   the probate court, to C., who executed his notes, with security for the
   purchase money, in 1859. C. sold the same lands to S., and in 1866, S.
   sold them to Mrs. B. B., the guardian, in his annual accounts from 1860
   to 1873, reported this purchase money as collected, and was ordered by
   the court to invest it, etc. *Held,* that this order to invest the funds was
   an adjudication of the fact that the fund had become amenable to the
   jurisdiction of the court as money, and that Mrs. B., who was a remote
   vendee, might well conclude that the purchase money had been paid to
   the guardian, and the statutory lien, therefore, discharged.

APPEAL from the Chancery Court of *Copiah* County.

Hon. E. G. PEYTON, Jr., Chancellor.

The facts in this case are fully stated in the opinion of the court.

The dismissing of the complainant's bill is assigned for error.

*H. B. Mayes*, for appellants, filed an elaborate brief, insisting that the guardian is not estopped, by his annual accounts, from enforcing his lien against the defendant in the court below, and cited the following authorities, to wit: Baines *v.* McGee, 1 S. & M., 208; Lambeth *v.* Elder, 44 Miss., 80; How. & Hut. Dig., p. 410, sec. 10; Hutch. Code, p. 675, art. 8, sec. 3; Miller *v.* Helm, 2 S. & M., 698–9; Walker *v.* Fuqua, 24 Miss., 646: Elliott *v.* Connell, 5 S. & M., 105; Free. on Judg., p. 212; Rev. Code, 1857, p. 431, art. 33; Sugd. Vend., 2d vol., 59; Martin *v.* Nash, 31 Miss., 330; Wolfe *v.* Dowell, 13 S. & M., 108.

*T. E. Cooper*, on the same side.

*Harris & George*, for appellees, filed a brief; insisted that the lien was discharged; also, an elaborate argument in reply; cited cases in the Digest, pp. 363–4, § 588; Rev. Code, 1857, p. 463, art. 152, p. 308; House *v.* Fultz, 13 S. & M., 39; Acts of 1859 and 1860, p. 414.

SIMRALL, J., delivered the opinion of the court.

In 1858, Timothy Brown, guardian for two minors, sold their real estate, under decree of the probate court, to R. J. Catchings, who, with personal sureties, executed his notes for the price, $4,320.91. A year afterwards, Catchings sold and conveyed the same land, at the same price, to C. R. Smith. In 1866, Smith sold and conveyed to Mary Barlow, the appellee, for $3,500.

Catchings and Smith, in their separate answers, state that when the negotiatiations were pending between them, for the purchase by the latter from the former, Catchings proposed to sell upon the terms that Smith should pay his first note to Brown, guardian, then about due, and arrange with him to assume the balance of the debt. The arrangement was consummated by Smith substi-

tuting his notes, with R. J. and I. N. Catchings as sureties. Smith paid $2,500, and as one V. Davis was indebted to him several thousand dollars, it was arranged that he, as principal, and Smith, as surety, should execute a note to Brown, guardian, for $3,176.25, which was the balance due on Smith's notes; this was done in 1859.

Brown seeks to change this lien upon the land, by virtue of the statutory mortgage, as the amount unpaid and uncollected by him. In the several annual and partial settlements made by Brown in the probate court, in 1860–61 and subsequently, he reported as collected, from time to time, the several installments of the original purchase money. On each settlement the court audited and approved his account as stated, and directed him to retain the balance, found due the ward, at interest, or to loan it out. His partial accounts and settlements appeared in that form for several years, until 1873, when the guardian filed what purports to be a final account, in which he states that he charged himself by mistake with this purchase money as collected; claims that it is represented by uncollected notes. That account is still pending, without final action by the court. In 1866, Smith sold and conveyed the land to Mary Barlow, the appellee, for $3,500.

Mrs. Barlow, in her answer, insists that she is an innocent purchaser. The question is, Does the lien adhere to the land against her?

The statute is: " But the land and all personal property sold by guardians shall be held liable and subject to a lien for the payment of the purchase money, as if a mortgage had been executed by the purchaser, and had been duly registered; and such lien shall continue until an acknowledgment of satisfaction be entered of record in the probate court." Code, 1857, p. 463, art. 152. The statute in reference to sales of lands, tenements, etc., by an executor or administrator, is not so stringent, viz.: "The land shall be held liable and subject to a lien therefor, as if a mortgage had been executed by the purchaser and registered." Code, 1857, p. 446, art. 90. Prior to the revision of 1857, the lien reserved, on

both real and personal property, whether the sale was made by an executor, or administrator, or guardian, was of the same import, "and (the property) shall be liable to the payment thereof in the same manner as if a mortgage had been taken on the property." Hut. Code, p. 675, art. 8., sec. 3.

The intendment of the law is, that the lien is reserved for the benefit of the estate in the one case (Baines v. McGee, 1 S. & M., 219), and of the ward, in the other. The rights of the distributees or wards must be consulted rather than the administrator or guardian. Elliott v. Connell, 5 S. & M., 106.

The duties of the guardian are, to support and maintain his ward out of the income of the estate, on a scale of expenditure to be determined by the court. He may, under license and authority, if deemed best, convert land into money. In whatever form the property may be, it should be made productive. Hence, the guardian must make the excess of money over expenditures bring interest, either by retaining it himself, or loaning it out. He is required to make stated exhibits of his accounts, so that the court may be properly advised, to make the necessary orders, according to exigencies.

Brown, upon a representation satisfactory to the probate court, obtained a decree to sell the land, on annual installments, with notes and personal security. In 1860, he reported that he had collected the first installment. That collection constituted about one-fourth of the balance in his hands. The probate court approved the account, and directed him to keep the money at interest or loan it out. In the several succeeding annual accounts, he reports like collections, and receives the same direction. Do these proceedings, had in the probate court, meet and satisfy the requirements of the statute, to wit: "the lien shall be continued until an acknowldgment of satisfaction be entered of record in the probate court." If this proceeding were against Smith, the purchaser from Catchings, there would be perhaps no satisfaction of the lien, for in reality the money was not paid by the guardian; but was represented by his notes, with Catchings' surety. He

was party to the arrangement; distinct by cognizant of its character.

But could Mrs. Barlow rely upon the probate proceedings, as conclusive evidence of an acknowledgment of satisfaction, entered in that court. We are not aware that the precise question of what the statute means has been adjudicated. Manifestly the law intends that the lien shall be operative like a registered mortgage. All persons, purchasers and creditors, at their peril, must take notice. One idea intended to be conveyed is, that a purchaser from the guardian's vendee cannot plead want of notice. As to that, he is charged with notice, just as though the lien was manifested by a recorded mortgage.

The lien is created by law, and results from the decree, the sale, its confirmation, and the guardian's deed. It is not a mortgage, because it does not convey the title conditionally back to the guardian, and no suit at law can be brought, grounded upon the lien, as a title, or evidence of a title. But, "it is like a mortgage, because everybody is charged with notice, and it binds the property in the hands of a remote vendee, just as would a registered mortgage."

The lien continues until acknowledgment of satisfaction in the probate court. The statute does not prescribe a formal mode. All would agree that if the guardian should make a formal report of the collection of the money, and should ask the court to enter of record that the lien was discharged, and it should be so ordered, the statute would be satisfied.

If the guardian in his ordinary annual accounts charges himself with the money as collected and on hand, and the court approves his account, and directs him to loan the money or retain it on interest; this is an adjudication that the fund, heretofore standing out on the securities of the purchase, has become amenable to its jurisdiction as money, and it accordingly disposes of it to make profit for the ward.

That ensues as clearly from the action of the court, as if it had entered up an order, formally declaring that the lien is satisfied.

The partial or annual accounts of the guardian are *prima facie* correct as against the ward. Heard *v.* Daniel, 26 Miss., 452–3. Several cases hold that annual accounts are conclusive against the guardian, subject, however, to correction, for inadvertence and oversight, mistake or miscalculation. McFarlane *v.* Randle, 41 Miss., 411, 423; Johnson *v.* Miller, 33 id., 553; Coffin *v.* Bramlitt, Guardian, 42 id., 206. If partial settlements, passed in the probate court, have such dignity, and are so binding upon the parties who make them, it would be a hard rule which would impose upon strangers who ventured their money upon the faith of what they import, less insight and force. A purchaser from the vendee of the guardian, cannot claim the immunity of an innocent lawyer, unless the records of the probate court show in some distinct and unmistakeable form that the original debt has been paid, and the court has recognized the fact.

That has been emphatically done in this case. First, the guardian has acknowledged that the debt has been paid to him, year after year, in his annual accounts. The court has approved these accounts, and upon each settlement has ordered the guardian to keep or loan the balances at interest. In several of these accounts the guardian charges himself with ten per cent. interest on these balances; the larger part of which was made up of the proceeds of the lands. On examination of these records, Mrs. Barlow, or her husband who negotiated for her, might unhesitatingly conclude that the debt to the guardian had been paid and the lien discharged. We hardly think that the most prudent and cautious purchaser would have thought it worth while to have made further inquiry. Lambeth *v.* Elder, 44 Miss., 80. If we should hold that the statutory lien still subsisted, Mrs. Barlow has been beguiled of her money by a delusive faith in these records. If we do not, the ward may, per possibility, lose a part of the debt. If the debt in whole or in part should be lost by the mismanagement, negligence or ignorance of the guardian, there remains to the ward his personal responsibility, as well as that of the sureties on his bond.

The counsel for appellant pressed the reading of the statute; that the acknowledgment of satisfaction of the lien must be indorsed on the margin of the record of the guardian's deed. These use two serious objections to that construction. First, the lien attaches to personal as well as to real estate; and it is not necessary to pass the title to the former, that there should be a deed; nor does the statute itself make any change in the ordinary mode of passing from one to another the ownership of such property. Second, the words do not admit of this interpretation, for satisfaction must be entered in the "court." On this theory it would not be practicable to discharge the lien on personal property, for it has not been usual nor is it necessary to execute a deed to pass the property.

We are of opinion that the proceedings had at the instance of the guardian, and the orders of the probate court show that the money had been collected, and that it was dealt with, both by the guardian and the court, as a fund to be increased by interest; and that these records amount to an acknowledgment of satisfaction of the lien.

Any other view of the subject would detract from judicial proceedings the sanctity and verity which they import, and would destroy confidence in them.

The decree of the chancellor is affirmed.